CASTELLO ET AL., PLAINTIFFS AND APPELLANTS, *v.* PÉREZ ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Mayagüez in an Action of Nullity.

No. 1387.—Decided April 28, 1916.

AGENTS—CAPACITY TO PURCHASE—ATTORNEYS—PROPERTY PURCHASED BY ATTORNEY FOR HIS PRINCIPAL—PUBLIC SALE.—It appearing from the evidence admitted in this case without objection on the part of the plaintiffs that although defendant Pettingill apparently purchased the property in litigation for himself he really bought it for the account and benefit of his principals, A. Ruffer & Sons, who by their acts ratified the purchase of the property which Pettingill notified them he had made in their name, the last paragraph of subdivision 5 of section 1362 of the Civil Code prohibiting attorneys from acquiring personally or through an agent, even at a judicial or public sale, property or rights which may be the object of litigation in which they may take part by virtue of their profession or office, is not applicable.

PURCHASE AND SALE—ACQUISITION FROM RECORD OWNER—THIRD PERSON.—When a person takes title from another who appears in the registry as entitled to make the sale, the purchase made by his vendor and recorded in the registry cannot be invalidated as to him because he is a third person and was not a party to the instrument or contract recorded, according to article 34 of the Mortgage Law.

ID.—ATTORNEY—PRESUMPTION.—The fact that it appears from the registry that defendant Pettingill was attorney for his principals in another case against other persons does not warrant the inference that he was also attorney for his said principals in the suit in which he purchased the property which he subsequently conveyed to defendant Pérez Sales.

The facts are stated in the opinion.

*Messrs. José Sabater* and *Francisco Soto Gras* for the appellants.

*Messrs. José de Diego, Benjamin J. Horton* and *Angel Arroyo Rivera* for the appellees.

Mr. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

This is an appeal from a judgment of the District Court of Mayagüez of April 19, 1915, dismissing the complaint with the costs, expenses, disbursements and attorney fees against the plaintiffs.

In the complaint the plaintiffs prayed for the following:

1. That the public sale by Special Master Benjamin S. Cornwell on September 4, 1909, of the property described in said complaint and known as "Fe" to defendant N. B. K. Pettingill in the action prosecuted by A. Ruffer & Sons against Agustín Castelló Busquets and others, is null and void.

2. That consequently the deed of sale executed in favor of defendant N. B. K. Pettingill by the special master on September 15, 1909, before Notary Eugenio Géigel, and the record of the same in the Registry of Property of Mayagüez, are also null and void.

3. That in like manner the deed of sale and mortgage of the said property executed by defendant N. B. K. Pettingill on February 28, 1910, before Notary Eugenio Géigel in favor of the other defendant, Tomás Pérez Sales, is null and void, as is also its record in the registry.

4. That the defendants who opposed the action be adjudged to pay the costs, expenses and attorney fees.

The plaintiffs allege that Agustín Castelló, their predecessor in interest, by virtue of the dissolution of the Mayagüez firm of Patxot, Castelló & Company, acquired the property called "Fe," which is described in the complaint; that in a suit brought by A. Ruffer & Sons, of London, in the Federal Court of Porto Rico against Agustín Castelló as liquidator of the said firm for the foreclosure of a mortgage on the said property, judgment was rendered on January 9, 1904, decreeing that defendant Castelló pay to plaintiffs

A. Ruffer & Sons, or their attorney of record, the sum of $10,264.81 within five months from the date of the judgment, and further decreeing that in case of failure · to make the said payment the mortgaged property should be sold at public auction; that in accordance with the judgment the special master appointed by the court, Benjamin S. Cornwell, sold the property "Fe" at public auction on September 4, 1909, to defendant N. B. K. Pettingill for the sum of $8,000; that on September 15, 1909, the special master executed before Notary Eugenio Géigel, the proper deed· of judicial sale in favor of Pettingill, who recorded it in. the registry; that later by a deed of February 28, 1910, which was also executed before Géigel and recorded in the registry, the said Pettingill, in his own right and as attorney in fact of his wife, sold the property "Fe". to the other defendant, Tomás Pérez Sales, who mortgaged the property in favor of his vendor to secure the payment of the unpaid balance of the purchase price; that Agustín Castelló having died, the plaintiffs are his sole and universal heirs.

As grounds for the nullity of the sale to Pettingill and of that by Pettingill to Pérez Sales, the plaintiffs also alleged that from the time A. Ruffer & Sons filed their complaint in the Federal Court against Agustín Castelló until the execution of the judicial deed of sale, N. B. K. Pettingill was the attorney of record of the former in that case and that this fact, *i. e.,* that Pettingill was the attorney of A. Ruffer & Sons in the suit in which he acquired the property, clearly appeared in the registry at the time of the sale to Pérez Sales.

In his answer defendant Pettingill alleged that he did not acquire the property "Fe" at the public auction for his own benefit, but purchased it for the account and benefit of A. Ruffer & Sons, whose attorney he was, although this was not stated at the sale or in the deed executed by the special master in his favor; and both Pettingill and the other defendant, Pérez Sales, denied that there was any showing in the registry that Pettingill was the attorney of A. Ruffer &

Sons in the suit for foreclosure, Pérez Sales being ignorant of that fact.

The case went to trial and judgment was rendered in the terms already stated, which judgment is submitted to our consideration by virtue of an appeal taken therefrom by the attorney for the plaintiffs.

In its opinion the lower court bases its judgment on the following findings:

"1. Although it is true that the deed executed on September 15, 1909, by Special Master Benjamin S. Cornwell in favor of N. B. K. Pettingill does not show that the sale was being made for the benefit of A. Ruffer & Sons, the court is convinced that the sale was not actually made to Pettingill personally, but for the account and benefit and under instructions from his clients who were credited with the amount of the sale.

"2. It was not clearly shown in the registry, and the court is of the opinion that it was not shown at all, when N. B. K. Pettingill executed the deed of sale of the said property in favor of Tomás Pérez Sales that the former was the attorney for A. Ruffer & Sons in the action resulting in the acquisition by him of the said property at public auction."

In opposition to the foregoing findings the appellants assigned the following grounds of appeal:

1. The lower court erred in holding that although the deed of sale executed by the special master was executed in favor of Pettingill, it is convinced that it was executed in fact for the account and benefit of his clients, A. Ruffer & Sons.

2. The lower court erred in holding that it is not clearly shown in the Registry of Property of Mayagüez that at the time Pettingill sold the property to Pérez Sales the former was attorney for the mortgagees in the suit for foreclosure which resulted in the auction sale.

The two errors may be condensed into one, namely, error in weighing the evidence as to whether Pettingill acted for the account and benefit of his clients, A. Ruffer & Sons, when he purchased the property "Fe" at public sale, and as to

whether it was clearly shown in the registry that at the time of the said sale Pettingill was attorney for A. Ruffer & Sons in the suit in which the sale was made.

The evidence introduced shows positively that defendant N. B. K. Pettingill was attorney for A. Ruffer & Sons in the action brought by them in the Federal Court against Agustín Castelló as liquidator of Patxot, Castelló & Company, and that being such attorney for A. Ruffer & Sons he purchased the mortgaged property for $8,000 in his own name at a public sale by the special master of the Federal Court and satisfied the same by delivering the following receipt:

"Mayagüez, P. R., *September 4, 1909.*

"A. Ruffer & Sons, the complainants in the suit against Patxot, Castelló & Company for the foreclosure of a mortgage upon the plantation 'Fe,' do hereby, by their attorney of record, acknowledge the receipt of the sum of eight thousand dollars, for which said plantation has this day been sold by Benjamin S. Cornwell, as special master, and hereby stipulate and agree that the said sum of eight thousand dollars shall be credited as a payment made upon the amount found to be due from defendants to plaintiffs in said suit. N. B. K. Pettingill, counsel of record for A. Ruffer & Sons."

But although Pettingill appears to be acting for himself both at the foreclosure sale and in the deed of conveyance in his favor, he ventured to buy the property for his clients and took the risk that the property would remain definitely in his or their hands; and as A. Ruffer & Sons accepted the purchase made by Pettingill, it is evident that the sale was made definitely to them and not to Pettingill.

The weight we give to the facts is in keeping with documentary evidence introduced at the trial, among which is the following letter from A. Ruffer & Sons to Pettingill:

"London, October 6, 1909.—Mr. N. B. K. Pettingill, San Juan.— Dear Sir:—We confirm our letter of the 27 August, press copy herewith, and beg to acknowledge receipt of your letter of the 17 September, from which we note that the auction of the coffee plantation 'Fe' was held on the 4th ult. and there being no bidders, the property

was adjudged to us and that you took the title in your own name. We request you to hold this property in trust for us and at our entire disposal and in the meantime please continue to look out for possible buyers. We trust you may be able to advise us of a satisfactory sale at an early date. * * * (Signed) A. Ruffer & Sons.''

The following is from a letter written on August 27 by A. Ruffer & Sons to Pettingill:

''London, August 27, 1909.—Mr. N. B. K. Pettingill, San Juan, P. R.—Dear Sir:—*Re Patxot-Castelló.*—We are in receipt of your favor of the 10th August, contents noted; but as we did not wish to bid ourselves for the estate in question, we wired you yesterday, in code, to the following effect, viz.:—'Your letter of tenth received, will not bid, sell on best terms possible. * * * (Signed) A. Ruffer & Sons.' ''

The foregoing letter shows that Pettingill was not authorized by A. Ruffer & Sons to purchase the plantation ''Fe'' for their account, but that, on the contrary, A. Ruffer & Sons did not wish to buy it. The other letter of October 6, 1909, shows, however, that Pettingill notified his clients that the property had been sold to them for want of bidders and that they accepted the same.

Pettingill complied with the request to sell the property made by A. Ruffer & Sons in their letter of October 6, as will be seen from the copy of another letter which he wrote to A. Ruffer & Sons on February 14, 1910, which, in so far as pertinent, reads as follows:

''February 14, 1910.—Ruffer & Sons, 39 Lombard Street, London, England.—Gentlemen:—I am gratified to be able to report that I have made a contract of sale for the plantation, as it relieves me of responsibility, which I was beginning to find irksome. The purchaser is a Spaniard, Don Tomás Pérez Sales, and the price is $10,000 payable $3,500 cash and the balance in yearly instalments of $1,000 per year with 4 per cent interest. The total price was the best offer I had and while one other offer gave larger instalments, that cash was only $2,000 as against this man's $3,500. I decided in favor of this because I believe that a larger cash payment gave greater security that the property would not be turned back on your hands.

''The cash payment has been deposited in the bank here in escrow,

but the titles have not yet been completed. If you are willing that I should retain my whole fee out of this cash payment, my connection with the transaction could be closed, and you could collect your instalments through Messrs. Moral & Company or any other agent you might select. But I do not insist upon this if you do not think it equitable. The fact that the purchaser intends living on the property and working it himself gives, I think, a practical guaranty that the instalments will be paid as due. * * * Yours sincerely,".

In a subsequent letter, dated May 13, 1910, Pettingill wrote to A. Ruffer & Sons accounting for the cash payment which Pérez Sales had made on account of the property, remitting to them the balance in their favor. The pertinent part of this letter reads as follows:

"May 13, 1910.—Messrs. A. Ruffer & Sons, 39 Lombard Street, London, England.—Gentlemen:—As indicated in my letter of last week I would do, I herewith enclose you a draft on the Commercial Bank of Scotland, Limited, for £435.0.13, which is the equivalent at the rate of exchange to-day prevailing of $2,118.70, American gold.

"This amount is arrived at as follows: Since the settlement of account was sent you at the end of February I have executed and delivered a deed to the 'Fe' to the purchaser, Tomás Pérez Sales, the cost of which including revenue stamps was $40; deducting that from the $58.70 balance due you from the operations of the coffee crop, leaves a present balance of $18.70. The cash payment made by Pérez Sales was $3,500 of which your 60 per cent amounts to $2,100, the two items therefore making the said sum of $2,118.70, which I believe you will find correct.

"Whenever there is further information you will hear from me again. Yours faithfully."

The correspondence between Pettingill and A. Ruffer & Sons is convincing that although A. Ruffer & Sons were unwilling at first to purchase the property, they accepted the purchase made by Pettingill when notified thereof and commissioned him to try to dispose of it, which Pettingill did by selling the same to Pérez Sales, remitting the cash payment to A. Ruffer & Sons.

The evidence was admitted without objection on the part of the plaintiffs and they must be bound by the results show-

ing that Pettingill, although apparently purchasing the property for his own account, really bought it for the account and benefit of his principals, A. Ruffer & Sons. The firm of A. Ruffer & Sons accepted the acts of Pettingill in the matter of the sale of the property "Fe" and availed themselves of the benefits of the transaction. By their acts they ratified the purchase of the property which Pettingill notified them he had effected in their name, and the fact that they had previously expressed their disinclination to Pettingill to take part in the sale is of no consequence.

This being so, the last paragraph of subdivision 5 of section 1362 of the Civil Code, prohibiting attorneys from acquiring personally or through an agent, even at a judicial or public auction, property or rights which may be the object of litigation in which they may take part by virtue of their profession and office, is not applicable to the case.

As regards defendant Tomás Pérez Sales, the conclusion which we have reached concerning his co-defendant Pettingill must favor him, but even supposing that Pettingill had purchased the property "Fe" for himself and not for his clients, A. Ruffer & Sons, it would follow that Pérez Sales took title from the person who appeared in the registry as entitled to make the sale, and the purchase made by Pettingill, which is recorded in the registry, could not be invalidated as to him, because he was a third person who was not a party to the instrument or contract recorded. Article 34 of the Mortgage Law.

We have examined carefully the records of the two deeds whose annulment is sought, as well as all other records of the property "Fe" which appear in the evidence as certified to by the registrar of property, without finding in any of them any showing that Pettingill was attorney for A. Ruffer & Sons in the action brought by them against Agustín Castelló y Busquets as liquidating partner of Patxot, Castelló & Company. In the deed to Pettingill of September 15, 1909, the receipt of September 4 signed by N. B. K. Pettingill as

attorney of record for A. Ruffer & Sons is not transcribed. It is true that it appears from the registry that Pettingill was attorney for A. Ruffer & Sons in another action brought by them against Sebastián Cabrer, but it is not deducible therefrom that Pettingill was also the attorney for A. Ruffer & Sons in the suit in which he purchased the property.

Article 36 of the Mortgage Law provides that rescissory and resolutory actions shall not lie against third persons who have recorded the deeds of their respective interests in accordance with the provisions of the said law; and article 37 excepts from the foregoing rule, among others, rescissory and resolutory actions which owe their origin to causes which specifically appear in the registry, third persons being, according to article 27, those who were not parties to the recorded instrument or contract.

Tomás Pérez Sales was not a party to the deed of sale executed by the special master of the Federal Court in favor of Pettingill, and he recorded in the registry the conveyance of the property "Fe" executed in his favor. Pettingill appeared in the registry as the owner of the said property by virtue of a title which was also recorded, and it was not shown in the registry clearly and unmistakably, or otherwise, that Pettingill was the attorney for A. Ruffer & Sons in the action in which he acquired the property which was afterwards conveyed to Pérez Sales.

As to Pérez Sales, we must arrive at the conclusion that even supposing that the deed of conveyance to Pettingill was null and void, this would not affect the subsequent title of Pérez Sales.

The judgment appealed from should be

*Affirmed.*

Justices Wolf, del Toro and Aldrey concurred.

Mr. Justice Hutchison took no part in the decision of this case.